J-A24026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| R.B.H. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| J.R.H. | : | No. 1413 EDA 2019 | |

Appeal from the Order Entered April 15, 2019
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2017-61201-C

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED NOVEMBER 12, 2019**

Appellant, R.B.H. ("Father"), appeals from the April 15, 2019 Order entered in the Bucks County Court of Common Pleas that, *inter alia*, awarded Appellee, J.R.H. ("Mother"), primary physical custody of G.H. ("Child").  We affirm.

In its Pa.R.A.P 1925(a) Opinion, the trial court set forth the relevant factual and procedural history of this case and we adopt its detailed recitation for purposes of this appeal.  *See* Trial Ct. Op., 6/14/19, at 1-28.  Briefly, Father and Mother were married in 2004 and are the parents of Child, who was born in 2015.  The parties separated in 2017 after Father had an extra-marital affair with a neighbor.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On July 7, 2017, Father filed a Complaint in Divorce, which included a count for Custody of Child, seeking shared legal and physical custody. In response, Mother filed an Answer and Counterclaim, also raising a count for Custody of Child, seeking shared legal and primary physical custody. On the same day, the parties appeared at a custody conference before a Master but were unable to reach an agreement. After the conference, the Master filed a report recommending that the parties attend a custody evaluation.

Father thereafter filed a Petition for Special Relief seeking an interim custody order, a mental health evaluation for Mother, a custody evaluation, and co-parenting counseling. Mother filed an Answer and Counterclaim seeking the same relief. The parties entered into two stipulations: the parties (1) agreed to appoint Diana S. Rosenstein, Ph.D., as a joint neutral custody evaluator and (2) agreed to an interim custody Order, which gave both parties shared legal custody, and Mother primary physical custody. Specifically, the Order gave Father physical custody of Child every Tuesday overnight, every Thursday from 4:00 PM to 7:00 PM, and alternating weekends.

The parties participated in the custody evaluation process from December 13, 2017 to February 22, 2018, and Dr. Rosenstein issued a report on February 28, 2018.

The custody trial commenced on September 13, 2018, and, after four days of testimony over the course of eight months, concluded on April 15, 2019. The trial court heard testimony from Father, Mother, numerous friends and neighbors, paternal grandparents, and one of Mother's co-workers. The

trial court also heard testimony from two experts, Dr. Rosenstein, and Steven Cohen, Ph.D., an expert in family psychology and custody recommendations.

In sum, the trial court heard the following evidence. Mother currently lives in Furlough, works as a portfolio specialist with PNC Bank, and has over an hour commute to work in Philadelphia. Mother recently switched her schedule to telework on Mondays and every other Friday. Father currently lives in Doylestown, is a Manager at Nationwide Mortgage Bankers close to his home, and has a flexible work schedule. Child attends daycare. Mother handles more of the logistics regarding medical appointments, playdates, and activities; Father is more of the "fun" parent.[1]

Dr. Rosenstein, the joint neutral custody evaluator, recommended that the current custody schedule remain in place. Dr. Rosenstein testified, *inter alia*, that equal physical custody requires a high degree of cooperation, parents have a very contentious relationship, and parents are unable to co-parent Child effectively.

At the conclusion of the hearing, on April 15, 2018, the trial court issued a custody Order, which ordered that the interim custody Order remain in place as the final custody Order.

Father filed a timely Notice of Appeal. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

---

[1] N.T. Hearing, AM Session, 1/23/19, at 98; N.T. Hearing, 4/15/19, at 10.

A. Did the trial court err in its application of the factors under [23 Pa.C.S. § 5328(a)] and abuse its discretion in determining that equal physical custody was not warranted in the case at bar?

B. Was it an error and an abuse of discretion when the trial court found that both Mother and Father were equally guilty of casting accusations against the other?

C. Was it an error and an abuse of discretion when the trial court found that Mother's lengthy workdays had been resolved by Mother's ability to work from home?

D. Did the trial court err and abuse its discretion in its application of custody factor number 5 at [23 Pa.C.S. § 5328(a)(5)], when it specifically concluded that Mother's friends qualified as extended family?

Father's Br. at 3 (reordered for ease of disposition; some capitalization omitted).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. *E.D. v. M.P.*, 33 A.3d 73, 77 (Pa. Super. 2011). The Custody Act requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." *S.W.D. v. S.A.R.*, 96 A.3d 396, 401 (Pa. Super. 2014). *See also* 23 Pa.C.S. § 5323(a), (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

"The paramount concern in child custody cases is the best interests of the child." **C.G. v. J.H.**, 193 A.3d 891, 909 (Pa. 2018). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." **M.J.N. v. J.K.**, 169 A.3d 108, 112 (Pa. Super. 2017).

This Court reviews a custody determination for an abuse of discretion. **In re K.D.**, 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." **Id.** (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." **Id.**

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad, but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (quotation and citation omitted). Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." **K.T. v. L.S.**, 118 A.3d 1136, 1159 (Pa. Super.

2015) (citation omitted). We can only interfere where the "custody order is manifestly unreasonable as shown by the evidence of record." ***Saintz***, 902 A.2d at 512 (citation omitted).

In his first issue, Father asserts that the trial court erred in its application of the Section 5328 custody factors and that the evidence demonstrates that a shared physical custody schedule would be in Child's best interest. Father's Br. at 54. Essentially, Father argues that the record does not support the trial court's findings. This argument lacks merit.

Our review of the record reveals that the trial court considered all of the Section 5328 custody factors on the record prior to rendering its custody decision. ***See*** N.T. Hearing, 4/15/19, at 205-210. In explaining its decision, the trial court opined:

> [This court] concluded that both parents are likely to attend to the health and safety of [Child] and that both parents encourage and permit contact between [Child] and the non-custodial parent. This court found that there is no abuse present in this case and that both parents can perform normal parental duties.
>
> [This court] found that both Mother and Father provide stability and continuity and that both parties have strong support systems in the area. There are no siblings in this case, and [Child] is too young to prefer one parent over the other. Despite their conflict, [this court] saw no evidence that either parent has attempted to turn [Child] against the other. Both parents enjoy a loving, stable, consistent, and nurturing relationship with [Child]. [This court] saw no evidence of domestic violence or drug and/or alcohol abuse on the part of either parent.
>
> This court concluded that Mother is more directly involved in attending to [Child]'s daily, physical and emotional development. The parties live close to each other and have the ability to cooperate with each other, however, as this court stated, the

- 6 -

conflict in this case is "palpable" and the parties, while capable, are unwilling to cooperate with each other.

[Child] is flourishing under the current physical custody schedule and this court believed that the agreed temporary physical custody schedule should be the final order of court. [This court] note[s] that Mother was granted primary physical custody and Father was granted lengthy partial physical custodial time with [Child].

As noted, this court awarded primary physical custody of [Child] to Mother. . . .Equally shared physical custody, at minimum, requires a high degree of collaboration, cooperation, and often compromise, and that is not present here.

Trial Ct. Op. at 27-28 (citation omitted). The record supports the trial court's conclusions. Accordingly, we find no abuse of discretion.

In his second issue, Father contends that the trial court abused its discretion when it made a finding that both Mother and Father have leveled accusations at each other throughout the custody proceedings, when the evidence demonstrates that Mother is the parent who directed an onslaught of untrue accusations towards Father. Father's Br. at 23, 34-35. Father argues that because Mother raised more allegations, Mother's credibility is at issue, and the trial court abused its discretion when it awarded primary physical custody to Mother. *Id.* at 34-35. This argument is devoid of merit.

The trial court opined:

the allegations raised by both are scurrilous and over the top, but while there may be some truth to them, they are not valid across the board, and in no way do they affect the ability of either parent to nurture and love and take care of [Child]. . . . Accusations were leveled by both parties, none of which directly impacted custody issues.

- 7 -

Trial Ct. Op. at 12. Our review of the record supports the trial court's conclusion that both parties raised numerous accusations against each other during the course of the custody proceedings, some of which were true and some were false. Notably, the trial court opined that the accusations were not dispositive to its custody determination. We decline to reweigh the evidence or usurp the credibility determinations of the court. As the record supports the trial court's findings, we find no abuse of discretion.

In his third issue, Father avers that the trial court abused its discretion when it concluded that Child was no longer spending an "inordinate amount of time at daycare" because Mother's work schedule recently changed and she is able to work from home a few days per week. Father's Br. at 16. Father argues that despite Mother's testimony that Child was spending less time in daycare as a result of her new work schedule, a review of the daycare attendance records from January 2018 to January 2019 show that Child was still spending long days in daycare while Mother was at work. *Id.* at 18-20. Once again, Father argues that the record does not support the trial court's findings. Our review of the record belies this claim.

Mother testified that her work schedule changed in July 2018, she was able to work from home every Monday and every other Friday, and as a result, Child spends less time in daycare. N.T. Hearing, AM Session, 1/23/19, at 67-68. On cross-examination, Father admitted that the daycare log reflected that Child spent less time in daycare because of Mother's change in her work

schedule. N.T. Hearing, 1/22/19, at 146-147. Finally, our review of the daycare log reveals that prior to July 2018, almost half of Child's days spent in daycare exceeded nine hours, while after July 2018, less than one-fifth of Child's days spent in daycare exceeded nine hours. **See** Exhibit F-15. As the record supports the trial court's finding, we find no abuse of discretion.

In his final issue, Father avers that the trial court abused its discretion when it concluded that Mother's friends qualified as "extended family" when considering Section 5328(a)(5), which requires the trial court to determine "the availability of extended family." Father's Br. at 36 citing 23 Pa.C.S. § 5328(a)(5). Father argues that because Mother's parents live in Colorado and Father's parents live locally, this factor should have weighed heavily in favor of Father. Father's Br. at 36-37. Father's argument that a trial court cannot consider friends to be "extended family" under Section 5328, without citation to relevant authority, is unavailing.

In evaluating the Section 5328 custody factors, the trial court considered the availability of extended family, and found the factor to be neutral between the parties. Importantly, the trial court noted that Father's parents lived locally, and **were willing to support both parties.** **See** Trial Ct. Op. at 26. The trial court also acknowledged that Mother presented several "long-term friends" as witnesses. **Id.** The trial court opined: "Father's parents are close by, Mother's are not. It's not fatal. Mother has a great support system; many people who care for her and will be there, and while

they are not family, they can serve in that capacity." **Id**. Our review of the record supports the trial court's finding and, thus, we find no abuse of discretion.

In sum, the trial court has provided us with a comprehensive, well-reasoned, and thorough Opinion in a difficult case that supports its analysis of the Section 5328(a) factors for its custody determination, and the record supports those findings. Accordingly, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/19